UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Cephus Mitchell,<br><br>                 Petitioner,<br><br>    v.<br><br>United States of America,<br><br>                 Respondent.<br>_____ | Criminal Action No. 2:11-cr-00472-BHH<br>Related Civil Action No. 2:21-cv-01442-BHH<br><br>**Opinion and Order** |

On April 21, 2021, the Fourth Circuit granted Cephus Mitchell's ("Petitioner") request for leave pursuant to 28 U.S.C. §§ 2244(b), 2255(h) to file a successive motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (ECF No. 2602.) The Fourth Circuit held that Petitioner had made a *prima facie* showing of possible merit that the new substantive rule of constitutional law announced in *United States v. Davis*, 139 S.Ct. 2319 (2019), and held to be retroactively applicable to cases on collateral review by the Supreme Court, may apply to his case. (*Id*.) That same day, Petitioner filed a successive § 2255 (hereinafter "§ 2255 motion"), arguing that his due process rights were violated during his prior plea and sentencing proceedings and that he is entitled to relief under *Davis*. (ECF No. 2608.)

Now pending before the Court is the Government's motion to dismiss Petitioner's § 2255 motion. (ECF No. 2625.) On March 22, 2023, Petitioner, through counsel, filed a response in opposition. (ECF No. 2699.) Having thoroughly reviewed the motions and the

record in this case, the Court finds this matter suitable for disposition without a hearing. For the reasons set for the herein, the Court grants the Government's motion to dismiss.

## PROCEDURAL HISTORY & RELEVANT FACTS

Petitioner was one of nine defendants named in a fourth superseding indictment returned by the grand jury on December 11, 2012. (ECF No. 1187.) On April 2, 2013, Petitioner pled guilty to Counts I, 11, and 13 of the indictment. (ECF No. 1333.) Count 1 alleged Petitioner violated 21 U.S.C. § 846 [conspired with others to possess with intent to distribute and distribution of various narcotic substances and to maintain various places in Charleston to manufacture and distribute controlled substances]; Count 11 alleged he violated 18 U.S.C. § 924(c)(1)(A)(iii) [using a firearm during and in relation to a drug trafficking crime and a crime of violence]; and Count 13 alleged he violated 18 U.S.C. § 924(c)(1)(A)(iii) & 924(j) [using a firearm during and in relation to a drug trafficking crime and a crime of violence, causing the death of Jamar Gathers through use of a firearm in such a manner to constitute murder]. (ECF No. 1187.) Before accepting the plea agreement, Petitioner faced a mandatory minimum sentence of ten years, consecutive to life imprisonment. In contrast, the plea agreement specified a sentencing range of 240 months to 393 months. (ECF No. 1333 at 8.)

During the plea colloquy, the district judge read Counts I, 11, and 13 of the indictment, outlined what the Government would have to prove as to each count, and Petitioner verbally affirmed that he understood each count and the Government's burden of proof at trial. (ECF No. 1697 at pp. 7-11.) Petitioner also verbally affirmed that he did, in fact, engage in the conduct as alleged in Counts 1, 11, and 13 of the indictment. (*Id.* at 19-21.) The Government then outlined the following facts relevant to these counts:

> Your Honor, this case involves an investigation into Bayside, which is a housing development in Charleston, South Carolina, in the District of South Carolina, involving drug trafficking activities. The defendant was participating with the other members of the indictment in distributing various drugs, including cocaine and crack cocaine as well as heroin. The source of the heroin was Mr. Smith. And the lead person who was basically selling or distributing the cocaine, the crack and the heroin in Bayside was Jamar Gathers. Through a series of events that accelerated on August 14th of 2010, Mr. Gathers determined to cut off Mr. Blount, Mr. Mitchell, Ms. West and Mr. Deveaux from the drug trafficking that he was engaging in them with. They were selling for him, essentially, and there was some concern on his part, apparently, that money was being stolen or lost, or that drugs were being stolen or lost. Leading up also there is some incidents in the neighborhood, and the drive-by shooting which is mentioned as count 11, on August the 14th, occurred as well. That which Mr. Mitchell aided and abetted or participated in, which involved the shooting of Malik Walker on that date, who was in -- off Romney Street. States parenthetically that Mr. Walker had shot up Building 105, which is the stash house in Bayside used by the individuals I mentioned. So in retaliation, they went out and sought him out and had a drive by shooting of him. That caused Mr. Gathers additional concern. And wiretap information, the other evidence the Court is aware of, Mr. Gathers, as I said, was going to cut everybody off from drugs, and was coming on Saturday the 21st of August to do that very thing. As a result, the members of the group that was directly involved, decided that the way they needed to protect themselves, given Mr. Gathers' past history with other defendants, was to kill him. And they discussed that amongst themselves before the killing, and encouraged or counseled each other to do so. The killing occurred on the 21st of August in Bayside in Charleston, South Carolina. And Mr. Gathers was shot as a result of this discussion and the aiding and abetting by the different individuals. And Mr. Mitchell was a part of those discussions, and aided and abetting in the killing of Mr. Gathers.

(*Id.* at 21-23.) Petitioner verbally affirmed that he agreed with this summary. (*Id.* at 23.) The Government also requested to incorporate as the Rule 11 colloquy its March 27, 2013, memorandum it previously filed for the bond hearing. (*Id.* at 21.) The district judge asked if this was agreeable to the defendant, and Petitioner's then-counsel stated "yes." (*Id.*) The district judge then noted that "[w]e've been over it numerous times and the defendant has heard it as well, so I think it's acceptable to do that." (*Id.*) In relevant part, this memorandum stated the following:

3

**IX. Additional Information on Cephus Mitchell**

….

The Defendant is charged with two violations of 18 U.S.C. 924(c) and thus faces a statutory mandatory minimum sentence of thirty years consecutive to any other count. He is a career offender and because of the murder faces a life sentence. The two 924(c) charges are both based [on] shootings. The first was a drive by shooting which had its genesis during the week of August 14, 2010, when Malik Byers[1] (associated with RSK) came into Bayside and shot up Apartment 105, which was being used as a stash house for Gathers by Blount, Mitchell and others. In response, on August 14, 2010, Blount (driving a car rented earlier by his girlfriend Gabriella Clay), and Cephus Mitchell as well as Daquan Brown left Bayside and drove down Romney Street by Athens Court. When they saw Byers [sic] on his bike, they shot Byers, wounding him in the abdomen. The second shooting was the murder. During the week after the drive by shooting at Athens Court, Vashty West and Cephus Mitchell discussed "taking care" of Gathers, as they owed him money. At some point, they also stole a black book bag that held cash and a quarter kilogram of cocaine. On August 21, 2010, Gathers called and talked with Blount on the phone, telling him that he was on the way over to Bayside #105. As previously noted, he was coming to pick up his drugs and cash. Blount called Mitchell and Mitchell and West stood by. Gathers showed up and was shot in the back of his head. Witnesses saw West with a gun in her hand as Gathers fell to the ground in the breeze way. A number of witnesses corroborate the fact that Mitchell sold drugs out of building 105. Another witness noted that Mitchell sold "Gold Star" and "Knockout" brand heroin.

(ECF No. 824 at 11.) The district court accepted Petitioner's guilty plea to Counts I, 11, and 13 on April 2, 2013.

Prior to sentencing, a Presentence Investigation Report ("the PSR") was prepared. (ECF No. 1579.) The PSR's factual section extensively outlined the drug trafficking, the drug-related drive-by shooting of rival gang member Malik Walker on August 14, 2010, in support of Count 11, and the murder of Jamar Gathers on August 21, 2010, in support of

---

[1] The record reflects that, after the date of this memorandum, it was determined that Malik's last name is Walker, not Byers.

Count 13. (*Id.* ¶¶ 8-26; see *id.* ¶¶ 11, 16-17, 24.) Petitioner raised no objections to the PSR. (ECF No. 1698 at 2.)

During the sentencing hearing, the Court adopted the factual statements in the Presentence Report ("PSR") as the Court's findings of fact, to which Petitioner also did not object. (*Id.* at 2-3.) The Government then verbally outlined the following relevant facts:

> In this case, Your Honor, as the Court is well aware, he has pled guilty to not only the drug conspiracy, but also to the drive-by shooting which occurred a week before, and the murder itself. The drive-by shooting occurred on August the 14th. And in the course of that event, Mr. Mitchell is the one that noticed that the guy from RSK, the 16-year-old victim, was driving by shooting the stash house in Bayside, which is Building 105. And during the course of it, threw a weapon to Mr. Deveaux. And Mr. Mitchell, from what the Government has, actually fired back at the victim. The next day they went looking for this 16 year old in order to do revenge. And as Mr. Mitchell told somebody, you can't expect to shoot up a house and expect to get away with it. So because of that, they went searching for the 16 year old, found him on a bicycle. And Mr. Mitchell was one of the people that shot at him. The 16 year old was hit in the abdomen and seriously injured, was in I.C.U. And this event, I think, kind of created concern in Mr. Gathers' organization, and ultimately led Mr. Gathers to decide to cut these -- his crew off. And the crew, of course, included Mr. Mitchell, Mr. Blount, Mr. Deveaux, Miss West and some others. With regard to that, Your Honor, the defendant is essentially the individual that was involved in the plotting and scheming to kill Mr. Gathers. And, in fact, they decided to commit a robbery because Mr. Gathers kept significant amounts of drugs and cash in Building 105, and so they decided to rob Mr. Gathers of that. And to get away with that, they decided to murder him. Of course there were other concerns about what would happen because of the robbery, and that's indicated in the reports as well. When the robbery was finally committed, after it was over, Mr. Mitchell is the one that, with Mr. Deveaux, stole the kilo of cocaine from the apartment. So, therefore, the Government argues that that's a drug-related robbery. And that's really the motivation, is for gain.

(ECF No. 1698 at 6-7.) The district court sentenced Petitioner to a total term of 396 months (consisting of 240 months on Count 1, 276 months on Count 13 (concurrent to Count 1), and 120 months on Count 11 (consecutive to Counts 1 and 13)) on August 5, 2013. (ECF No. 1580.)

5

Petitioner filed a direct appeal to the Fourth Circuit on August 12, 2013. (ECF No. 1584). Petitioner's appellate counsel submitted an *Anders* brief questioning the validity of Petitioner's sentence, and the Fourth Circuit ultimately affirmed the district court's sentence but remanded the matter with instructions to correct scrivener's errors in the judgment. (ECF No. 1826). An amended judgment was filed on August 27, 2014. (ECF No. 1827).

Petitioner's first § 2255 motion was filed on May 24, 2016 (ECF No. 2176), and it was denied by the district court on December 5, 2016 (ECF No. 2290), pursuant to the Government's motion to dismiss (ECF No. 2248), which the court construed as a motion for summary judgment. Then, as noted at the outset, the Fourth Circuit granted Petitioner's request to a file a successive § 2255 motion to challenge his convictions on Count 11 and 13 pursuant to *Davis*. Petitioner's § 2255 motion is now before the Court, upon the Government's motion to dismiss.

## STANDARD OF REVIEW

A circuit court may authorize a second or successive § 2255 motion if a prisoner shows:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found [the movant] guilty of the offense; or
>
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. §§ 2244(b)(3); 2255(h). Even where the Fourth Circuit has authorized a successive motion pursuant to § 2255, as in this case, a district court must conduct a thorough review of all allegations and evidence presented by the prisoner to determine

6

whether the motion meets the statutory requirements for filing a second or successive motion before proceeding to consider the motion on its merits. *See, e.g., United States v. Garcia-Mesa*, No. CR-99-00734-PHX-SRB, 2023 WL 9508028, at *4 (D. Ariz. Oct. 18, 2023) (noting that the "Ninth Circuit considered only whether Defendant had made a *prima facie* showing of *possible* merit to warrant a fuller exploration by the district court" and stating that the statute is clear that a district court "*must conduct* a thorough review" to determine whether the statutory threshold has been met) (emphasis in original) (internal quotation marks and citations omitted), *report and recommendation adopted*, No. CR99-00734-PHX-SRB, 2024 WL 124308 (D. Ariz. Jan. 11, 2024). If a prisoner cannot prove at the district court level that his claim satisfies one of the requirements under §§ 2244(b)(3), the district court lacks jurisdiction over the case and must dismiss the motion. *See* 28 U.S.C. § 2244(b)(4) ("A district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section."). A prisoner bears the burden of establishing his claims by a preponderance of the evidence. *See Vanater v. Boles*, 377 F.2d 898, 900 (4th Cir. 1967).

## DISCUSSION

Petitioner contends that his two § 924(c)-based convictions are unconstitutional after *Davis* struck down the validity of the residual clause because the record is unclear as to whether the district court relied on the force clause or the now-invalid residual clause when accepting his plea. Petitioner argues that the record from his plea and sentencing demonstrates a failure to articulate the predicate offense in question clearly and, as to

7

Count 11 specifically, demonstrates a failure to adequately specify what underlying conduct triggered liability under § 924(c).

In support of dismissal, the Government contends that *Davis* does not apply because the § 924(c) counts, Count 11 and 13, were committed in relation to a drug trafficking crime, as charged in Count 1. The Government further states that the murder in Count 13, to which Petitioner pled guilty, is a crime of violence for 924(c) purposes under the *force* clause. And because the force clause remains valid and enforceable post-*Davis*, it contends that *Davis* is not implicated, and Petitioner is not entitled to relief.

In *Davis*, the Supreme Court considered the constitutionality of a federal criminal statute, 18 U.S.C. § 924(c). 139 S. Ct. 2319. Under § 924(c), a person who uses or carries a firearm "during and in relation to a crime of violence or drug trafficking crime" may be separately convicted of and sentenced for both the predicate violent or drug trafficking crime and the use or carrying of a firearm in furtherance of the predicate crime. 18 U.S.C. § 924(c)(1). A "drug trafficking crime" for purposes of § 924(c) means "any felony punishable under the Controlled Substances Act (21 U.S.C. §§ 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951 et seq.), or chapter 705 of title 46." 18 U.S.C. § 924(c)(2). The statute defines a "crime of violence" as a felony that "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(A)–(B). Subsection (A) is "known as the elements clause" and subsection (B) is known as "the residual clause." *Davis*, 139 S. Ct. at 2324.

> In the same statute, subsection (j) notes:
>
> A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall –
>
> > 1) if the killing is a murder (as defined in section 1111), be punished by death or by imprisonment of any term of years or for life; and
> >
> > 2) if the killing is manslaughter (as defined in section 1112), be punished as provided in that section.

18 U.S.C. § 924(j). As subsection (j) is committed "in the course of a violation of subsection (c)," the same analysis applies in determining whether an offense qualifies as a predicate conviction under § 924(c)(3).

The Supreme Court ultimately concluded in *Davis* that the residual clause of § 924(c)(3)(B) was unconstitutionally void for vagueness, and therefore, that convictions and sentences based on the residual clause definition of "crime of violence" are invalid. *Davis*, 139 S. Ct. at 2336. The force clause's definition, however, remains valid and enforceable, such that § 924(c) convictions based on predicate offenses which meet that definition remain valid. Therefore, "[a]fter *Davis*, an offense qualifies as a crime of violence only if it meets the definition in § 924(c)'s elements clause." *United States v. Green*, 67 F.4th 657, 662 (4th Cir. 2023).

In deciding whether an offense meets the definition in the elements clause, courts apply a "categorical approach." *United States v. Taylor*, 596 U.S. 845, 850 (2022). Under the categorical approach, "[t]he only relevant question is whether the federal felony at issue always requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force." *Id.*

Here, Petitioner pled guilty to Count 1, 11, and 13 of the Fourth Superseding Indictment. As to Count I, Petitioner pled guilty to:

9

>conspiring to knowingly, intentionally, and unlawfully possess with intent to distribute and to distribute a quantity of cocaine and cocaine base (commonly known as "crack" cocaine), both Schedule II controlled substance, in violation of Title 21, United States Code, Section 846 and 841(b)(1)(c); and conspiring to use or maintain various places on the West Side of Charleston for the purpose of manufacturing and distributing controlled substances, in violation of Title 21, United States Code, Section 856(a)(1).

(ECF No. 1333 at 2.) As to Count 11 and 13, the § 924(c) counts, Petitioner pled guilty to the following conduct:

>on or about August 14, 2010, in the District of South Carolina, . . . CEPHUS MITCHELL, a/k/a "C-4", a/k/a "Lit C", knowingly used and carried a firearm during and in relation to, and did possess a firearm in furtherance of, a drug trafficking crime and a crime of violence, both of which are prosecutable in a court of the United States, and did aid and abet each other in the commission of the aforesaid offense, during which the firearm was discharged; In violation of Title 18, United States Code, Sections 2 and 924(c)(1)(A)(iii).

>on or about August 21, 2010, in the District of South Carolina, . . . CEPHUS MITCHELL, a/k/a "C-4", a/k/a "Lil C"; . . . as principals, aiders and abettors and as co-participants in jointly undertaken criminal activity, knowingly did use and carry a firearm during and in relation to, and did possess a firearm in furtherance of, a crime of violence and a drug trafficking crime, both of which are prosecutable in a court of the United States, and did cause the death of a person through the use of the firearm in such a manner to constitute murder as defined in Title 18, United States Code, Section 1111, in that the defendants, with malice aforethought, did unlawfully kill Jamar Gathers by willfully, deliberately, and maliciously shooting him with a firearm, with premeditation, and did aid and abet each other in the aforesaid offense; All in violation of Title 18, United States Code, Sections 924(c)(1), 924(c)(1)(A)(iii), 924(j)(1) and 2.

(ECF No. 1187 at 6-7.)

Petitioner contends that he is entitled to relief because the record is "unclear" as to whether the district court relied on the force clause or the now-invalid residual clause when accepting his guilty plea to Count 11 and 13.

"To determine which predicate offenses underlie a § 924(c) conviction obtained by a guilty plea, [the Court] look[s] to the critical record documents, which include the

10

indictment, the plea agreement, the statement of facts, and the plea colloquy." *United States v. Smith*, No. 16-4250, 2022 WL 16919270, at *2 (4th Cir. Nov. 14, 2022) (internal quotation marks and citations omitted). "At bottom, the inquiry centers on whether 'the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty,' and, if so, whether that offense is a valid predicate." *Id.* (quoting *United States v. Crawley*, 2 F.4th 257, 263-65 (4th Cir. 2021).

### Count 13

In Count 13, Petitioner was charged under § 924(j) and ultimately pled guilty to the crime on the basis of his involvement in the murder of Jamar Gathers. At his plea hearing, the district judge read Count 13 of the indictment, cited above, and Petitioner verbally affirmed that he did, in fact, engage in the conduct as alleged. Petitioner also verbally agreed with the Government's summary of his conduct on August 21, 2010, admitting that he robbed Gathers and aided and abetting in the killing of Gathers. Thus, Petitioner pled guilty to causing death through the use of a firearm during and in relation to a "crime of violence," in violation of 18 U.S.C. § 924(j). The record reflects that Petitioner's conviction under §§ 924(c) and 924(j) was predicated on the crime of murder defined by 18 U.S.C. § 1111.[2] Because "murder is clearly a crime of violence within the meaning of 924(c)(3)'s *force* clause, rather than the *residual* clause," the Court finds that *Davis* does not apply.

---

[2] The Court also notes that in *United States v. Williams*, the United States Court of Appeals for the Fourth Circuit held that an individual may be convicted under § 924(j) for committing murder within the meaning of § 1111 even where the defendant did not directly kill the victim. 341 F.3d 350, 356-57 (4th Cir. 2003). In that case, there was evidence adduced at trial that the defendant accompanied others to rob the victim, and that on the way to the victim's house, the defendant was present when someone stated that if they robbed the victim, they would have to kill him. *Id.* at 356. The defendant was given a gun and was told to shoot at the victim "if he 'act[ed] up.'" *Id.* The defendant did in fact shoot at the victim, however, he then handed the gun to another individual, who ultimately shot and killed him. *Id.* The Fourth Circuit affirmed the defendant's conviction.

*Corprew v. United States*, No. CR RDB-02-567, 2021 WL 927381, at *3 (D. Md. Mar. 11, 2021) (emphasis in original).

Indeed, in *Niles v. United States*, the court specifically dealt with the question of "whether the underlying predicate crime for [the petitioner's] § 924(c) conviction qualifies as a crime of violence under the force clause," in a case where the underlying crime was the petitioner's use of a firearm to cause death, which constituted murder as defined by 18 U.S.C. § 1111. No. 4:01-cr-00198-DCN-1, 2019 WL 6170364, at *3 (D.S.C. Nov. 20, 2019). Just like here, in that case, the petitioner pled guilty to "knowingly using and carrying a firearm during and in relation to and possessing in furtherance of a drug trafficking crime and a crime of violence, and in the course of this violation, brandishing the firearm and causing death . . . through the use of the firearm, such death constituting murder, as defined by 18 U.S.C. § 1111, all in violation of 18 U.S.C. §§ 924(c) and 924(j)(1) and (2)." *Id.* at *1. The petitioner moved to vacate his sentence under § 2255, and the court considered the validity of his sentence under *Davis*. The court found the petitioner's conviction remained valid based on § 924(c)'s force clause, pointing to the Fourth Circuit's decision in *Irby*[3] and numerous other decisions in which courts have held that murder in violation of § 1111 is a crime of violence within the scope of the force clause. *Id.* at *3. The court specifically held that *Davis* did not apply and accordingly did not provide relief to the petitioner. *Id.* at *4.

While the Fourth Circuit in *United States v. Jackson*, 32 F.4th 278 (4th Cir. 2022), found a modified categorical approach was more appropriate than a categorical approach in this instance, it, too, reasoned:

---

[3] *In re Irby*, 858 F.3d 231, 237 (4th Cir. 2017) (holding that "[c]ommon sense dictates that murder is categorically a crime of violence under the [elements] clause").

12

> Undoubtedly, federal premeditated first-degree murder is a "crime of violence." Jackson does not even argue to the contrary. Moreover, federal premeditated murder requires an intentional mens rea and thus does not in any way violate [*United States v.*] *Borden*'s requirement. 141 S. Ct. [1817,] 1821–22, 1834 [2021]. And premeditated murder necessarily requires the use of "*violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140. Indeed, to commit federal premeditated first-degree murder, a death-results crime, is to intentionally inflict the greatest physical injury imaginable—death. *See Roof* 10 F.4th at 401. Thus, premeditated murder in violation of § 1111(a) is categorically a "crime of violence." And this "crime of violence" constitutes a valid underlying crime sufficient to support Jackson's conviction of violating § 924(c) and (j).

*Id.* at 287. *See also United States v. Cochran*, No. 3:22-CR-30064-RAL, 2023 WL 4599942, at *5 (D.S.D. July 18, 2023) (holding that "first degree premeditated murder is a proper predicate offense under the modified categorical approach . . . . The United States has indicted a predicate offense that plainly involves the use of force under § 924(c)").

Upon review of the critical record documents in this case and relevant case law, the Court is satisfied that Petitioner's conviction on Count 13 was expressly based on a valid predicate: premeditated murder in violation of § 1111(a). Notably, Petitioner does not argue that murder as defined in § 1111 is ***not*** a "crime of violence" for purposes of § 924(c)(3)'s force clause. Thus, with the force clause still intact post-*Davis*, the Court finds that *Davis* provides no relief to Petitioner and upholds his conviction on Count 13.

## Count 11

Petitioner's argument for relief centers mostly on his conviction on Count 11. This is not surprising, as it is true that, unlike in Count 13, both the indictment and the plea agreement fail to specify a predicate crime of violence. They also do not explicitly state in Count 11 that Count 1 is the drug trafficking predicate to support the § 924(c) charge.

13

Rather, these documents state that the alleged violation took place during and in relation to "a drug trafficking crime ***and*** a crime of violence, both of which are prosecutable in a court of the United States, and did aid and abet each other in the commission of the aforesaid offense, during which the firearm was discharged." (ECF No. 1187 at 6; ECF No. 1333 at 2) (emphasis added.) There is also no agreed upon factual statement in the plea agreement. (*See generally* ECF No. 1333.)

Standing alone, however, that is not a problem because "the government need not 'specify a specific § 924(c) predicate offense in the § 924(c) charge in the indictment,' nor 'separately charge or convict the defendant[] of the § 924(c) predicate offense.'" *United States v. Graham*, 67 F. 4th 218, 221 (4th Cir. 2023) (quoting *United States v. Randall*, 171 F.3d 195, 208 (4th Cir. 1999)). Because these documents are, however, "unhelpful in identifying any predicate offenses" for Count 11, the Court must look to the plea transcript. *United States v. Graham*, 67 F. 4th 218, 222 (4th Cir. May 3, 2023).

During the plea colloquy, the district court asked Petitioner if he "on or about August 14th, 2010, in the District of South Carolina, together with Shakenth Renard Deveaux, knowingly use[d] and carr[ied] a firearm during and in relation to and possess[ed] a firearm in furtherance of a drug trafficking crime ***and*** a crime of violence both of which are prosecutable in a court of the United States" and if he "aid[ed] and abet[ted] each other in the commission of the aforesaid offense during which the firearm was discharged, in violation of Title 18 of the U.S. Code 9 Sections 2 and 924(c)(1)(A)(iii)." (ECF No. 1697 at 19-20) (emphasis added.) In response, Petitioner stated "Yes, sir." (*Id.* at 20.) The Government also outlined the following facts in support of Count 11:

> The defendant was participating with the other members of the indictment in distributing various drugs, including cocaine and crack cocaine as well as

14

>heroin. The source of the heroin was Mr. Smith. And the lead person who was basically selling or distributing the cocaine, the crack and the heroin in Bayside was Jamar Gathers. Through a series of events that accelerated on August 14th of 2010, Mr. Gathers determined to cut off Mr. Blount, Mr. Mitchell, Ms. West and Mr. Deveaux from the drug trafficking that he was engaging in them with. They were selling for him, essentially, and there was some concern on his part, apparently, that money was being stolen or lost, or that drugs were being stolen or lost. Leading up also there is some incidents in the neighborhood, and the drive-by shooting which is mentioned as count 11, on August the 14th, occurred as well. That which Mr. Mitchell aided and abetted or participated in, which involved the shooting of Malik Walker on that date, who was in -- off Romney Street. States parenthetically that Mr. Walker had shot up Building 105, which is the stash house in Bayside used by the individuals I mentioned. So in retaliation, they went out and sought him out and had a drive by shooting of him.

(*Id.* at 21-22.) Petitioner confirmed at the guilty plea hearing that he agreed with this summary. (*Id.* at 23.) Petitioner also confirmed at the guilty plea hearing that he engaged in the drug-trafficking conspiracy set forth in Count 1 of the indictment, in violation of 21 U.S.C. §§ 841 and 846. (*See id.* at 19.)

Contrary to Petitioner's assertion, the Court finds that the record reflects that Petitioner was sufficiently informed that he was pleading guilty to a violation of § 924(c) predicated on a crime of violence, i.e., aiding and abetting the drive-by shooting of Walker on August 14, 2010, **and** a drug trafficking crime, *i.e.* using a firearm in the drive-by shooting in furtherance of the narcotics conspiracy. The record demonstrates that Petitioner admitted to committing the predicate drug trafficking offense in Count 1 and admitted to aiding and abetting the drive-by shooting of a rival gang member in furtherance of his drug conspiracy conduct. If it was not abundantly clear to Petitioner about the relationship between his drug trafficking offense in Count 1 and the § 924(c) charge in Count 11, the Government further connected Petitioner's drug trafficking offense to the § 924(c) charge when it set forth the factual basis supporting Count 11 of

15

the indictment. Thus, to the extent there is any debate as to whether Petitioner's § 924(c) charge in Count 11 was "expressly predicated" on his drug trafficking offense, the Court finds that the Government's factual proffer, to which Petitioner agreed, showed that the drive-by shooting and the discharge of the firearm occurred during Petitioner's drug-trafficking conspiracy. The drive-by shooting of Walker was not a random event disconnected from Petitioner's drug trafficking activities. Instead, the victim was a rival gang member whom Petitioner and his co-defendants shot at because they believed he had "shot up" their stash house.

Notably, Petitioner does not dispute that the drug conspiracy offense in Count 1 qualifies as a "drug trafficking crime" or that it remains a valid predicate offense post-*Davis*. *See Fripp v. United States*, Nos. 4:08-cr-00275-RBH, 4:16-CV-02461-RBH, 2019 WL 2368459, at *2-3 (D.S.C. June 5, 2019) (finding petitioner not entitled to relief under *Johnson* or its progeny when a § 924(c) conviction is also predicated on a drug trafficking crime); *United States v. Long*, Crim. A. No. 12-418-3, 2021 WL 1210252, at *6 (E.D. Pa. Mar. 31, 2021) ("Defendants who were convicted of carrying a firearm during a drug trafficking crime therefore cannot have their convictions re-examined under the *Davis* line of cases."). Indeed, the Fourth Circuit will "uphold a § 924(c) conviction if it is 'expressly predicated' on at least one offense that categorically qualifies as a crime of violence or drug trafficking crime." *United States v. Ogun*, No. 16-7450, 2022 WL 843899, at *2 (4th Cir. Mar. 22, 2022) (citing *Crawley*, 2 F.4th at 263). Accordingly, because Petitioner's conviction on Count 11 was independently predicated on Count 1, an offense that categorically qualifies as a drug trafficking crime under § 924(c) and remains a valid

16

predicate, the Court finds that *Davis* provides no relief to Petitioner and upholds his conviction on Count 11.[4]

## CONCLUSION

In examining Petitioner's § 2255 motion for relief based on *Davis*, the Court has looked at the operative indictment, plea agreement, and guilty plea colloquy to evaluate whether there are valid predicate offenses to satisfy his § 924(c) convictions and sentence. The Court concludes that Petitioner's conviction on Count 13 was expressly based on premeditated murder in violation of § 1111(a), a valid predicate offense as it is a "crime of violence" within the meaning of 924(c)(3)'s force clause. The Court further concludes that Petitioner's conviction on Count 1 for conspiring to distribute controlled substances is a valid predicate offense to support his § 924(c) conviction on Count 11. Consequently, because *Davis* is not implicated in this case, the Court finds Petitioner is not entitled to relief under § 2255. Accordingly, the Court grants the Government's motion to dismiss and dismisses Petitioner's § 2255 motion with prejudice. Accordingly, it is hereby **ORDERED** that Petitioner's § 2255 motion (ECF No. 2608) is **dismissed**, and the Government's motion to dismiss (ECF No. 2625) is **granted**.

---

[4] The Court notes that it appears – despite the heading used in its motion (*see* ECF No. 2699 at 12) – that at least a portion of Petitioner's challenge to his § 924(c) convictions is not properly before this Court. Unlike in *Crawley*, for example, Petitioner does not argue in the body of his motion that his § 924(c) convictions relied on a now-invalid predicate offense. *See Crawley*, 2 F.4th at 261-62 (arguing that "his § 924(c) conviction relied on the now-invalid predicate offense of conspiracy to commit Hobbs Act Robbery"). Rather, he objects to the plea agreement and "indictment['s] fail[ure] to adequately specify what underlying conduct triggered liability under § 924(c)." (ECF No. 2699 at 14.) He contends that he is entitled to relief because the record is "unclear" as to the predicate conduct supporting these convictions, especially his conviction on Count 11. (*Id.* at 15.) Such a "speculative" argument, however, is "not explicitly within the scope of the Fourth Circuit's order granting him permission to file a [second] § 2255." *Brown v. United States*, Crim. No. 4:05-cr-770-TLW-1, 2024 WL 86334, at *7 (D.S.C. Jan. 8, 2024) (holding that petitioner's "assertion that his § 924(c) convictions are 'speculative' does not rise to a basis for habeas relief"). Indeed, the constitutionality of the residual clause does not affect whether Count 11 was deficient for failing to clearly state the crime of violence and drug trafficking crime that served as the predicate bases for conviction under § 924(c). Such a claim is unrelated to the Supreme Court's ruling in *Davis* and as such does not address a new rule of constitutional law.

## CERTIFICATE OF APPEALABILITY

The governing law provides that:

(c)(2) A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability ... shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies this standard by demonstrating that reasonable jurists would find the Court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the Court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001).

Here, the Court finds that the legal standard for the issuance of a certificate of appealability has not been met. Therefore, the Court denies a certificate of appealability.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

April 23, 2024
Charleston, South Carolina